# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

| | |
|---|---|
| **SARAH LEVINSON**, *individually and on behalf of a class of similarly situated persons*,<br><br>*Plaintiff*,<br><br>v.<br><br>**EQUIFAX INFORMATION SERVICES, LLC,**<br><br>*Defendant*. | **Case No:**<br><br><br>**JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

COMES NOW the Plaintiff, **Sarah Levinson**, ("**Ms. Levinson**"), on behalf of herself and all similarly situated individuals, by and through her attorneys, Seraph Legal, P.A., and complains of the Defendant, **Equifax Information Services, LLC** ("**Equifax**"), stating as follows:

## DESCRIPTION OF THE CASE

1. Under the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et. seq.* ("**FCRA**"), upon request, Equifax must disclose, clearly and accurately, all of the information in a consumer's file at the time of request. *See* 15 U.S.C. § 1681g(a). Frequently, Equifax fails to do so. In the instant matter, it provided a consumer disclosure containing material falsehoods about two separate accounts. Both accounts were credit card accounts which falsely stated that amounts due were "payroll deductible," meaning that payment for account was being deducted from Ms. Levinson's paycheck, *i.e.*, wage garnishment. In reality, the furnishers of data had reported that each account was "closed by credit grantor."

Equifax's fabrication of materially misleading information in this manner renders its consumer disclosure inaccurate and unclear. The inaccuracy appearing on Ms. Levinson's Equifax consumer disclosure is systemic, and affects virtually every consumer with an account reported as "closed by credit grantor." Ms. Levinson obtained her Equifax disclosure on April 18, 2019, nearly six months after Equifax was made aware of the problem through a consumer lawsuit under the FCRA alleging this very same issue. Several more lawsuits alleging the same inaccuracy and problem followed, but Equifax continued to produce disclosures for thousands of consumers in which it falsely claimed payment for credit card accounts had been reported by their creditors as being deducted from their paychecks.

2. On information and belief, this false reporting of garnishment "issue" is limited to *free* consumer disclosures generated through annualcreditreport.com. In reports Equifax *sells* to third-parties, the false garnishment allegation is absent. On information and believe, Equifax failed to rectify this problem in time to prevent the harm to consumers like Ms. Levinson, despite its duty under 15 U.S.C. § 1681g(a), because there are no profits to motivate its compliance.

3. In addition to this false garnishment issue, Ms. Levinson has eleven credit card accounts on her Equifax disclosure that are missing identifying account numbers. These omissions render the disclosures unclear, and could be easily remedied by the Defendant, who had the missing information within its knowledge and control.

4. In enacting the FCRA, Congress recognized that "consumer reporting agencies have assumed a vital role in assembling and evaluating consumer credit." *See* 15 U.S.C. 1681(a)(3). The purpose, of the FCRA is "to require that consumer reporting

agencies adopt reasonable procedures … in a manner which is fair and equitable to the consumer, with regard to … accuracy …" *See* 15 U.S.C. 1681(b). To carry out its intentions, Congress included in the statutory scheme a series of due-process-like protections that impose strict procedural rules on *consumer reporting agencies* ("**CRA's**").

## JURISDICTION AND VENUE

5. Federal subject matter jurisdiction exists pursuant to 15 U.S.C. § 1681p and 28 U.S.C. § 1331, as the Plaintiff brings her action under the FCRA, a federal statute.

6. Venue is proper in the Middle District of Florida pursuant to 28 U.S.C. §1391(b)(2) because therein: (i) a substantial part of the events giving rise to the claims and damages occurred; (ii) Plaintiff resides; and, (iii) Defendant transacts business.

## PARTIES

7. Ms. Levinson is a natural person residing in Tampa, Hillsborough County, Florida and is a consumer as defined by the FCRA, 15 U.S.C. 1681a(c).

8. Equifax is a Georgia limited liability company, with a primary business address of 1550 Peachtree Street NW, Atlanta, GA 30309.

9. Equifax is registered as a foreign limited liability company in the State of Florida, where its *registered agent* is **Corporation Service Company, 1201 Hays St., Tallahassee, FL 32301.**

10. Equifax is a nationwide CRA within the meaning of 15 U.S.C. § 1681a(f), in that it, for monetary fees, dues, and/or on a cooperative nonprofit basis, regularly

engages in whole or in part in the practice of assembling or evaluating consumer credit information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports, specifically the mail and internet.

## FACTUAL ALLEGATIONS

### Ms. Levinson's Equifax Disclosure

11. On or about April 18, 2019, Ms. Levinson requested a copy of her consumer credit disclosure from Equifax through www.annualcreditreport.com.

12. Equifax delivered its consumer disclosure ("**Equifax's Disclosure**") to Ms. Levinson, electronically, at her home in Tampa, Hillsborough County, Florida.

13. Pursuant to 15 U.S.C. § 1681g(a), upon receipt of Ms. Levinson's request, Equifax was required to "clearly and accurately" disclose all information in the consumer's file at the time of request, with limited exceptions which are inapplicable to this matter.

14. "A primary purpose of the statutory scheme provided by the disclosure in §1681g(a)(1) is to allow consumers to identify inaccurate information in their credit files and correct this information via the grievance procedure established under § 1681i." *Gillespie v. Equifax*, 484 F.3d 938, 941 (7th Cir. 2007)

15. Despite this legal requirement, Equifax's disclosure was neither clear nor accurate.

16. Equifax's disclosure contained **two** separate accounts stating "*Payment is payroll deductible*." **SEE PLAINTIFF'S EXHIBIT A.**

17. The term, "payroll deductible," in this context means that payments are

being made subject to a garnishment of the debtor's payroll wages.

18. The two accounts on which the erroneous statement "payment is payroll deductible" appeared were reported by Synchrony Bank/Old Navy, which appeared under the tradeline "SYNCH/OLD NAVY" and Wells Fargo National Bank, which appeared under the tradeline "WFFNB/FMG" (collectively, the "**Data Furnishers**"). *Id.*

19. No payment is being, or ever was, withheld from Ms. Levinson's paycheck for any of these accounts.

20. Ms. Levinson has a right to a full and complete disclosure of the contents of her file upon demand, at least once a year, and without charge, and that disclosure must be presented clearly and accurately. 15 U.S.C. § 1681j.

21. Equifax's failure to report these accounts accurately deprived Ms. Levinson of this right, causing her distress and frustration.

22. A consumer disclosure "must be made in a manner sufficient to allow the consumer to compare the disclosed information from the credit file against the consumer's personal information in order to allow the consumer to determine the accuracy of the information set forth in (her) credit file." *Gillespie* at 947.

23. Despite this legal duty, Equifax's Disclosure stated that two accounts were subject to payroll deduction, when the creditor had instead reported each account as "closed by credit grantor."

**Equifax's Errant System**

24. Equifax, like other nationwide CRAs such as Experian and Trans Union, requires its furnishers of data to report account history using a shorthand notation /

reporting language known as "Metro II."

25. Metro II's codes are administrated by the ***Consumer Data Industry Association*** ("**CDIA**"), a trade group which represents these same CRAs.

26. The "Metro II" special comment code, "AJ," which indicates "payroll deductible," was discontinued in September 2011 and no longer valid after this time.

27. As a result, the garnishment accounts reported by Equifax ***could not have been reported*** to Equifax as "payroll deductible" at any time since 2011. **SEE PLAINTIFF'S EXHIBIT B.**

28. Equifax has adopted automated procedures in order to process consumer requests for a free disclosure, pursuant to 15 U.S.C. § 1681j, through the website www.annualcreditreport.com

29. On information and belief, each time Equifax's automated system responds to a free credit report request through www.annualcreditreport.com, it erroneously translates the Metro II code for "closed by credit grantor" into the code "payment is payroll deductible" when it generates the consumer disclosure.

30. Equifax's error has therefore likely affected tens of thousands of Florida consumers.

31. On information and belief, this Metro II code translation error does not affect consumer credit reports sold to third parties and does not affect consumer credit reports sold to consumers through Equifax's paid services.

32. Therefore, unless a consumer pays Equifax for their report, they will be under the impression that Equifax is communicating to potential creditors that their wages are being garnished.

33. A reasonable consumer would become concerned that this false information would have an adverse effect on their credit history, and cause them to believe that significant errors exist in their credit file.

### Equifax's Knowledge of its Errant System

34. Numerous consumers have notified Equifax of this same issue. *See, e.g., Christina Rochd v. Equifax Information Services, LLC*, Hillsborough County, Florida Case No. 2019-CC-007835, *Robert Moir v. Equifax Information Services, LLC*, Hillsborough County, Florida Case No 2019-CC-000060.

35. Despite ample notice and time to correct this error, Equifax continued to transmit false information, suggesting that consumer accounts closed by the credit grantor are actually subject to garnishment.

36. Equifax's knowing, unabated conduct demonstrates the willfulness of its violations, and therefore warrants an award of punitive damages. *See, e.g., Younger v. Experian Info. Sols., Inc.,* Case No.: 2:15-cv-00952-SGC, at *30 (N.D. Ala. Mar. 21, 2019) (awarding punitive damages against Experian for its repeated, willful violations of the FCRA").

### Disclosure Contained Other Errors and Omissions

37. Ms. Levinson's disclosure contained eleven (11) credit card revolving accounts reported by different credit grantors.

38. None of the 11 tradelines contained any account numbers whatsoever; rather, a blank space was printed next to the header "Account Number." **SEE PLAINTIFF'S EXHIBIT C.**

39. Ms. Levison is one of thousands of Florida consumers who have received reports within the past two years that omit account numbers necessary to make the disclosure clear and accurate within the standard set forth in *Gillespie*.

40. Without an account number, or at the minimum, a partial account number, a consumer like Ms. Levison is unable to utilize the statutory scheme designed by Congress to identify and correct errors in her credit file.

41. For example, Ms. Levinson has multiple credit card accounts with Capital One Bank USA NA ("**Capital One**").

42. Without an account number, it is difficult to disambiguate one account from another.

43. Similar to the false garnishment issue, Equifax knows of the ongoing systematic issues which plague the reports which it provides through www.annualcreditreport.com.

44. As of this filing, despite knowing of these issues and providing reports through monetized channels that do not have these errors, Equifax continues to provide inaccurate reports in response to consumer requests under the FCRA for their annual free credit reports.

**Prevalence of Equifax's Errors; Article III Standing**

45. On information and belief, the consumer disclosure provided to Ms. Levinson by Equifax is generated using a template which combines database information from a consumer's file and fillable fields within a consumer disclosure form.

46. Since the error originated within the template used to generate consumer disclosures, every consumer having a collection account who requested their disclosure

from Equifax received a consumer disclosure with the same errors as Ms. Levinson's, throughout the period in which the template was used.

47. Many consumers request their free annual credit disclosure from Equifax pursuant to the FCRA, particularly after Equifax's September 2017 revelation that the data for over 100 million consumers had been downloaded and stolen from its files by hackers.

48. Thus, a very large number of consumers have received defective disclosures from Equifax wherein a *closed* account identified as a *garnished* account and a *debt collector* is identified as the *original creditor*.

49. Consumers concerned about possible identity theft, particularly in light of the Equifax data breach, who obtained their Equifax disclosure, only to be told they had debts to *original creditors* of whom they had no knowledge, are likely to conclude that they were the victims of identity theft or fraud, when they were not, because the report is inaccurate.

50. Consumers have a right to the full disclosure of the contents of their Equifax file upon demand, at least once a year, and without charge, and it must be presented clearly and accurately; Equifax's failures deprived Ms. Levinson and her fellow class members of this right.

51. The failure of an entity to provide accurate and truthful information as required by law creates an injury-in-fact, thus creating standing pursuant to Article III; *See, e.g.*, *Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982), holding "alleged injury to (plaintiff's) statutorily created right to truthful housing information" was a cognizable injury in and of itself, regardless of whether the plaintiff actually hoped to reside in the defendant's housing complex; therefore "the Art. III requirement of injury in fact [was]

satisfied."

52. Further, Equifax's failure to truthfully and accurately provide the contents of Ms. Levinson's personal credit file creates a particularized injury, as well as a tangible injury, since she was entitled pursuant to the FCRA to receive, free of charge, a copy of her consumer disclosure containing all of the information in her credit file. Instead, Equifax delivered a disclosure which not only omitted important information but contained outright falsehoods not actually contained in her credit file.

## CLASS ACTION ALLEGATIONS

53. Plaintiff brings this matter as a Class Action, pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3), on behalf of herself and the following Class:

**All natural persons residing in the State of Florida who:**

**(a)  within two years of the date of the filing of this complaint, received a consumer disclosure from Equifax,**

**(b)  which evidenced one or more tradeline(s) in which Equifax stated that the account was "payroll deductible," when such was not the case.**

**(c)  Which contained credit accounts missing identifying account numbers, even though Equifax had such account numbers in its credit file.**

54. Plaintiff reserves the right to amend the definition of the Class based on discovery or legal developments.

55. **Numerosity. Fed R. Civ. P. 23(a)(1).** The Class members are so numerous that joinder of all is impractical as Plaintiff believes that there are at least ***Ten Thousand*** (10,000) similarly-situated persons. Equifax is one of the largest credit reporting agencies in the nation and its reports are frequently used in consumer credit, employment, and insurance transactions. Although the precise number of Class members is unknown, the names and addresses of potential Class members are identifiable through documents and business records maintained by Equifax.

56. **Existence and Predominance of Common Questions of Law and Fact. Fed. R. Civ. P. 23(a)(2).** There are questions of law and fact that are common to the Class and which predominate over questions affecting any individual class member. Specifically, these common questions include, without limitation:

(a) Whether labeling closed accounts as "payroll deductible" when no garnishment order was issued constitutes a failure of Equifax's duty under 15 U.S.C. §1681g(a)(1).

(b) Whether Equifax's failure to remedy these errors, found only in its *free* reports, after learning of these errors, demonstrates a willful violation of the FCRA.

57. **Typicality. Fed. R. Civ. P. 23(a)(3).** Plaintiff's claims are typical of the claims of each Class member, which all arise from similar operative facts and are based upon the same legal theories. Equifax produced a consumer disclosure for Plaintiff which, on information and belief, was generated using a template used to generate all the disclosures made to the purported class. Plaintiff has no interest adverse or antagonistic to the interests of other members of the Class, and has the same claims for statutory and actual damages that she seeks for absent Class members.

58. **Adequacy of Class Representation. Fed. R. Civ. P. 23(a)(4).** Plaintiff is an adequate representative of the Class and will fairly and properly protect the interests of the Class. Plaintiff has retained experienced counsel who have litigated well over one hundred consumer cases under the FCRA, as well as many other cases under other consumer-protection statutes, including the Fair Debt Collection Practices Act, Telephone Consumer Protection Act, Florida Consumer Collection Practices Act, Rosenthal Fair Debt Collection Practices Act, and other similar consumer protection statutes. Plaintiff and her counsel are competent and prepared for the prosecution of this class action litigation, and intend to pursue the claims vigorously. Plaintiff and her counsel will fairly and adequately protect the interests of members of the Class.

59. **Predominance and Superiority. Fed. R. Civ. P. 23(b)(3).** Questions of law and facts common to the Class members predominate over questions affecting only individual Class members. Under the totality of the circumstances, a Class Action is superior to other available methods for the fair and efficient adjudication of the controversy. Equifax's conduct described in this Complaint stems from common and uniform practices, resulting in systematic violations of the FCRA. Members of the Class do not have an interest in pursuing individual claims against Equifax as the amount of each Class member's individual claim is small compared to the expense and burden of individual prosecution. Class certification will also obviate the need for unduly duplicative litigation that might result in inconsistent judgments concerning Equifax's practices. Moreover, management of this action as a Class Action will not likely present any difficulties. In the interests of justice and judicial efficiency, it would be desirable to concentrate the litigation of all Class members' claims in a single forum.

60. Absent a Class Action, the Class members will continue to have their rights violated and will continue to suffer monetary and other damages.

61. Defendant's actions are generally applicable to the entire Class and accordingly, the relief sought is appropriate with respect to the entire Class.

62. All conditions precedent to this action have occurred, been satisfied, or waived.

## COUNT I
## VIOLATIONS OF THE FCRA

63. Ms. Levinson adopts and incorporates paragraphs numbered 1 – 62 as if fully stated herein.

64. Equifax violated 15 U.S.C. § **1681g(a)(1)** when, in response to Ms. Levinson's request for her free annual credit report, Equifax failed to clearly and accurately disclose to Ms. Levinson, a consumer, all of the information in her credit file at the time of the request. Specifically, Equifax's disclosure was deficient in the following ways:

   a. It described an account which had been closed by the credit grantor as "eligible for payroll deduction" even though Equifax knew this statement was false given the information it received and stored from the data furnisher, and by virtue of its own discontinuance of the code for this description.

   b. It failed to disclose the account numbers for almost two dozen revolving credit card accounts, impeding Ms. Levinson's ability to identify the accounts and verify their accuracy.

65. At the time of Ms. Levinson's request, Equifax's credit file contained the

accurate and/or missing information referenced above, such as the full account numbers for all 11 accounts, and the fact that no accounts were being collected by garnishment levied against Ms. Levinson's wages.

66. Equifax willfully provided inaccurate, incomplete, and unclear information in Ms. Levinson's disclosure, or at minimum, proceeded with a reckless disregard for her rights by utilizing procedures which it either knew or should have known to be insufficient to ensure accuracy in its reports.

67. Equifax's abdication of its duty under the FCRA to provide complete and accurate information is isolated to disclosures generated through a method that generates no profits for the Defendant, while correct reports are provided to those who are paying for them. This demonstrates that Equifax had the ability to comply with its obligations under 15 U.S.C. § 1681g(a)(1), but chose not to because there was no financial benefit to addressing this consumer rights issue.

68. Equifax's errors constitute a willful failure to fulfill its duty to clearly and accurately disclose to Ms. Levinson all of the information in her file at the time of the request, in derogation of Ms. Levinson's rights provided by 15 U.S.C. § **1681g(a)(1).**

69. Pursuant to 15 U.S.C. § 1681n(a)(1)(A), Equifax is liable for actual damages or statutory damages of not less than $100 or more than $1,000 per incident per class member for each willful violation of the Act.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff and the Classes pray for relief as follows:

A. An order certifying this case as a class action on behalf of the proposed Class under Federal Rule of Civil Procedure 23 and appointing Plaintiff and the undersigned counsel of record to represent same;

B. An award of statutory, actual, and punitive damages for the Class members;

C. An award of pre-judgment and post-judgment interest as provided by law;

D. An award of attorneys' fees and costs; and,

E. Such other relief as the Court deems just and proper.

## JURY TRIAL DEMANDED

Ms. Levinson hereby demands a trial by jury on all issues so triable.

Respectfully submitted this June 12, 2019, by:

| /s/ *Thomas M. Bonan* | /s/ *Bryan Geiger* | /s/ *Philip R. Goldberg* |
|---|---|---|
| Thomas M. Bonan | Bryan J. Geiger | Philip R. Goldberg |
| Florida Bar # 118103 | Florida Bar # 119168 | Florida Bar # 105940 |
| TBonan@SeraphLegal.com | BGeiger@SeraphLegal.com | PGoldberg@SeraphLegal.com |

**SERAPH LEGAL, P.A.**
2002 E. 5th Ave., Suite 104
Tampa, FL 33605
Tel: 813-567-1230
Fax: 855-500-0705
Counsel for Plaintiff

**EXHIBITS**

A   **Ms. Levinson's Equifax Credit Report – April 18, 2019 – Excerpt of Payroll Deduction Comment.**

B   **Ms. Levinson's Equifax Credit Report – April 18, 2019 – Excerpt of Missing Account Numbers.**